UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : : |
| Plaintiff, | : Civil Action No. 11-0205 (DEA) |
| v. | : **MEMORANDUM OPINION** : **AND ORDER** |
| GEORGE H. HOLLEY, *et al.*, | : : |
| Defendants. | : : |

ARPERT, Magistrate Judge

This matter comes before the Court on a Motion by Defendant George H. Holley ("Defendant") to vacate the settlement agreement and consent judgment entered in this matter on December 8, 2014 (the "Consent Judgment") pursuant to Federal Rule of Civil Procedure 60(b). *See* Dkt. No. 55. Plaintiff the Securities and Exchange Commission (the "SEC") opposes Defendant's Motion. *See* Dkt. No. 57. For the reasons set forth below, Defendant's Motion to vacate the Consent Judgment is DENIED.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Defendant is the co-founder and former Chairman of the Board of Home Diagnostics, Inc. ("HDI"), a company whose shares traded on the NASDAQ stock exchange. On January 31, 2011, the SEC filed its Complaint in the present action (the "Civil Action") against Defendant for insider trading in violation of Sections 10(b) and 14(e) of the Securities and Exchange Act.[1]

---

[1] In addition to Defendant Holley, the Complaint named as Defendants Steven V. Dudas and Phairot Iamnaita. Consent judgments as to Defendant Dudas and Defendant Iamnaita were entered on June 21, 2013 and May 30, 2014. *See* Dkt. Nos. 43, 46.

1

*See* Dkt. No. 1. In its Complaint, the SEC alleges that between December 2009 and January 2012, Defendant illegally shared material nonpublic information regarding the impending acquisition of HDI with six individuals (the "Tippees") with the intent that the Tippees purchase HDI stock on the basis of Defendant's tips. Compl. at ¶ 1. According to the SEC, the Tippees purchased HDI stock on the basis of the inside information provided by Defendant. *Id.* On February 2, 2010, HDI publicly announced that it had signed a merger agreement with Nipro Corporation ("Nipro") whereby Nipro would acquire all of HDI's outstanding common stock. *Id.* at ¶ 2. Following the announcement of the merger, the price of HDI's common stock increased by eighty-nine percent and the Tippees sold their HDI shares resulting in a collective profit of approximately $250,000. *Id.*

On February 4, 2011, an Indictment was returned against Defendant based on the same conduct alleged in the Civil Action. *See* Crim. Action. No. 11-66 (the "Criminal Action"). On July 20, 2011, the Government moved to intervene in the Civil Action and for an order staying discovery of the Civil Action pending the completion of the Criminal Action. *See* Dkt. No. 19. The Court granted the Government's Motion on August 19, 2011, and the Civil Action was stayed pending the outcome of the criminal proceedings against Defendant. *See* Dkt. No. 26. Trial of the Criminal Action began on July 30, 2012, and on August 8, 2012, after seven days of trial, Defendant pled guilty to two counts of securities fraud and the remaining counts were dismissed.[2] *See* Crim. Action No. 11-66, Dkt. No. 137. The two counts to which Defendant pled guilty charged Defendant with securities fraud through insider trading by disclosing confidential information regarding the anticipated merger to Defendant's cousin, Robert Hahn-Baiyor, and Defendant's close personal friend, Phairot Iamnaita. *Id.* Specifically, Defendant admitted to

---

[2] Defendant was sentenced to a three year term of probation and assessed a fine of $260,000.

disclosing material non-public information concerning the anticipated acquisition of HDI by Nipro to Mr. Hahn-Baiyor and Mr. Iamnaita with the understanding that they would use that information to purchase shares of HDI stock, and Mr. Hahn-Baiyor and Mr. Iamnaita then used the information disclosed by Defendant to purchase HDI stock. *Id.*

Following the conclusion of the Criminal Action, the Civil Action was reopened. *See* Dkt. No. 30. On December 5, 2014, the SEC filed a Motion for the entry of a final judgment, by consent, as to Defendant, in which Defendant acknowledged his guilty plea in the Criminal Action and the underlying facts of his plea that Defendant committed insider trading with respect to Mr. Hahn-Baiyor and Mr. Iamnaita. *See* Dkt. No. 51. On December 8, 2014, the Court entered the proposed final judgment (the "Consent Judgment"), under which Defendant is:

> (1) enjoined from violation Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;
> (2) enjoined from violation Section 14(e) of the Exchange Act and Rule 14e-3 thereunder; and
> (3) prohibited from acting as a director or officer of any company with securities registered under Sections 12 or 15(d) of the Exchange Act.

*See* Dkt. No. 52. In addition, Defendant agreed to pay a monetary penalty of $386,193 which has since been paid in full by Defendant. *Id.*

Two days after the Consent Judgment was entered by the Court, the United States Court of Appeals for the Second Circuit issued is ruling in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014). Subsequently, on February 22, 2015, Defendant filed the present Motion to vacate the Consent Judgment under Rule 60(b), arguing that the conduct to which Defendant pled guilty in the Criminal Action and admitted in the Civil Action, specifically insider trading through Mr. Hahn-Baiyor and Mr. Iamnaita, is no longer illegal according to the holding in *Newman*. In opposition, the SEC argues that the Second Circuit's decision in *Newman* did not legalize

Defendant's prior conduct and that no equitable factors, including the *Newman* decision, provide any grounds for relief from the Consent Judgment under Rule 60(b).

## II.  LEGAL STANDARD

### A. Federal Rule of Civil Procedure 60(b)

Under Rule 60(b), "the court may relieve a party . . . from final judgment, order or proceeding" under certain circumstances. The general purpose of Rule 60(b) is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Walsh v. Krantz,* 423 F. App'x 177, 179 (3d Cir. 2011) (quoting *Boughner v. Sec'y of Health, Educ. & Welfare,* 572 F.2d 976, 977 (3d Cir. 1978)). "Rule 60(b) is a provision for extraordinary relief and may be raised only upon a showing of exceptional circumstances." *Mendez v. Sullivan,* 488 F. App'x 566, 568 (3d Cir. 2012) (citing *Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140 (3d Cir.1993)). The Third Circuit "has emphasized that, by signing a consent decree, signatories make a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012) (citations omitted).

Rule 60(b)(5) provide,s in relevant part, that a court "may relieve a party . . . from a final judgment, order or proceeding" if "it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). A party seeking to modify a consent decree must establish, by a preponderance of the evidence: "(1) a significant change in factual conditions; (2) a significant change in law; (3) that 'a decree proves to be unworkable because of unforeseen obstacles'; or (4) that 'enforcement of the decree without modification would be detrimental to the public interest.'" *Democratic Nat'l Comm.*, 673 F.3d at 202 (quoting *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 384 (1992)). A

decree "may be modified if 'law has changed to make legal what the decree was designed to prevent.'" *Id.*

Rule 60(b)(6) is a catch-all provision which provides that a party may be relieved from a final judgment or order for "any other reason that justifies relief" and provides "a grand reservoir of equitable power to do justice in a particular case." *Hall v. Cmty. Mental Health Ctr.,* 772 F.2d 42, 46 (3d Cir. 1985) (internal quotation marks omitted). Courts are directed to dispense their broad powers under Rule 60(b)(6) only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Cox v. Horn,* 757 F.3d 113, 120 (3d Cir. 2014) (citing *Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140 (3d Cir. 1993)). A change in the law can qualify for relief under Rule 60(b)(6). *See AARP v. E.E.O.C*, 390 F.Supp.2d 437, 443 (E.D. Pa. 2005). However, the Third Circuit has held that "intervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)." *Cox,* 757 F.3d at 121 (emphasis in original).

Here, Defendant contends that *Newman* "undoubtedly represents a significant and intervening change in the law" which warrants vacating the consent judgment entered into by the parties. Dkt. No. 55 at p. 12. Accordingly, the Court must determine whether the Second Circuit's decision in *Newman* constitutes a significant change in the law which made legal what the consent judgment in this matter was designed to prevent under Rule 60(b)(5) or an intervening change in the law which qualifies for relief under Rule 60(b)(6).

### B. The *Newman* Decision

In *Newman*, the Second Circuit summarized the elements of criminal liability for a tipper as:

> (1) the insider tippers . . . were entrusted the duty to protect
> confidential information, which (2) they breached by disclosing
> [the information] to their tippee . . . , who (3) knew of [the tippers']
> duty and (4) still used the information to trade a security or further

> tip the information for [the tippee's] benefit, and finally (5) the insider-tippers benefitted in some way from their disclosure.

*Newman*, 773 F.3d at 448.

The "personal benefit" requirement for tippee liability derives from *Dirks v. S.E.C.*, 463 U.S. 646 (1983). In *Dirks*, the Supreme Court defined a "personal benefit" constituting a breach of fiduciary duty as "a pecuniary gain or a reputational benefit that will translate into future earnings" as well as the benefit an insider would obtain by "mak[ing] a gift of confidential information to a trading relative or friend." *Id* at 663-64. In *Newman*, the Second Circuit clarified that although the standard for a personal benefit is "permissive . . . the mere fact of a friendship, particularly of a casual or social in nature", does not constitute proof the receipt of a personal benefit. *Newman*, 773 F.3d at 452. The Court then held that:

> To the extent *Dirks* suggests that a personal benefit may be inferred from a personal relationship between the tipper and tippee, where the tippee's trades resemble trading by the insider himself followed by a gift of the profits to the recipient . . . we hold that such an inference is impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of pecuniary or similarly valuable nature. In other words . . . this requires evidence of a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter, or an intention to benefit the latter.

*Id.* (internal citations and quotations omitted).

Defendant contends that because he did not intend to receive "at least a gain of pecuniary or similarly valuable nature" when he provided confidential information to Mr. Iamnaita and Mr. Hahn-Baiyor, he is no longer liable for the conduct to which he pled guilty under *Newman* and accordingly, the Consent Judgment should be vacated under Rule 60(b).

## III. DISCUSSION

Defendant contends that the Second Circuit's decision in *Newman* legalized the conduct which formed the basis of the Criminal Action and the Civil Action against Defendant and therefore constitutes a significant change in law warranting vacating the Consent Judgment under Rule 60(b).[3] In opposition, the SEC argues that *Newman* did not legalize Defendant's conduct and is an improper basis for relief under Rule 60(b). Upon examination of the *Newman* decision as applied to the particulars of Defendant's case, the Court finds that Defendant has failed to demonstrate any extraordinary circumstances or other equitable factors qualifying for relief under Rule 60(b).

According to Defendant, his admitted actions in disclosing confidential information regarding the upcoming merger to his cousin and long-time confidant, with the intention to help these individuals, did not constitute insider trading because Defendant did not expect to receive any "pecuniary or similar value in return." Therefore, Defendant argues that the continued enforcement of the Consent Judgment is "particularly inequitable . . . because it is based on conduct that *Newman* has found to be lawful" and will cause Defendant to suffer hardship in the form of "personal humiliation and business embarrassment by precluding or limiting [Defendant's] service on corporate boards and other bodies." Dkt. No. 55 at p. 16.

While Defendant may not have disclosed the subject confidential information to Mr. Hahn-Baiyor and Mr. Iamnaita with the intent to receive a tangible benefit in return, Defendant has repeatedly acknowledged that the information was disclosed for the purpose of benefitting

---

[3] As to Defendant's argument that his agreement to the Consent Judgment was "based" on his guilty plea in the Criminal Action, and that his guilty plea in the Criminal Action was "premised on the erroneous reading of insider trading law embodied in the district court's proposed jury instruction that a personal benefit was not an essential element of [insider trading]", the Court notes that the Court's proposed jury instruction did in fact include a benefit to the tipper as a required element of insider trading. *See* Dkt. No. 55, Marino Cert. at Ex. 4.

these individuals, one of whom is related to Defendant and one with whom Defendant shares a close personal relationship. Defendant's intent to benefit and help people close to him is precisely the type of personal benefit the Second Circuit referred to in *Newman* when it stated that a personal benefit may be established by "evidence of 'a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter, or an intention to benefit the [latter].'" *Newman*, 773 F.3d at 452 (quoting *United States v. Jiau*, 734 F.3d 147, 153 (2d Cir. 2013).

Here, the proof a personal benefit to Defendant is not evidenced by "the mere fact of a friendship, particularly of a casual or social nature" such as the relationship between "two individuals [who] were alumni of the same school or attended the same church." *Newman*, 773 F.3d at 452. Instead, the proof of a personal benefit to Defendant exists in Defendant's repeated admission that he shared the confidential information regarding the merger with his "companion" and his first cousin with the intent to confer a benefit on them. While Defendant contends that there is no liability for insider trading absent a pecuniary benefit to the tipper, as observed by the Ninth Circuit in *United States v. Salman*, 792 F.3d 1087 (9th Cir. 2015), if *Newman* can be read to require the receipt of some tangible benefit for insider trading liability, "then a corporate insider or other person in possession of confidential and proprietary information would be free to disclose that information to [their] relatives, and they would be free to trade on it, provided only that [they] asked for no tangible compensation in return."

Although Defendant argues that *Newman* extinguished liability for the conduct to which he pled guilty in the Criminal Action and accepted responsibility in the Civil Action, the Court finds that Defendant's actions in disclosing confidential information to his "companion" and his first cousin with the intent to confer a benefit upon those individuals constitutes a personal

benefit giving rise to liability for insider trading under the Second Circuit's decision in *Newman*. Therefore, the Court finds that Defendant has failed to establish that the Second Circuit's decision in *Newman* constitutes a significant change in the law which makes legal the conduct for which Defendant accepted liability or that any intervening change in the law presented by the *Newman* decision represents an extraordinary circumstance justifying relief from the Consent Judgment entered in this matter. Accordingly, because the Court finds, upon examination of the particulars of Defendant's case, that Defendant has failed to demonstrate any grounds for relief under Rule 60(b), Defendant's Motion to vacate the Consent Judgment entered in this matter is DENIED.

## IV.     CONCLUSION AND ORDER

The Court having considered the papers submitted and oral argument by counsel, and for the reasons set forth above;

**IT IS** on this 21st day of September, 2015,

**ORDERED** that Defendant's Motion to vacate the Consent Judgment entered in this matter pursuant to Federal Rule of Civil Procedure 60(b) [Dkt. No. 55] is **DENIED**.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge